UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED

JAN 22 2020 *tc*

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. **20 CR 049** |
| v. | ) ) | Violation: Title 18, United States Code, Section 1001 |
| FERNANDO ZAMBRANO | ) | |

**JUDGE CHANG**

**MAGISTRATE JUDGE CUMMINGS**

The SPECIAL JANUARY 2019 GRAND JURY charges:

1. At times material to this indictment:

    a. Homeland Security Investigations ("HSI") was a criminal investigative unit within the Department of Homeland Security. HSI maintained a field office in Oakbrook Terrace, Illinois.

    b. Defendant FERNANDO ZAMBRANO was employed by the Palos Heights, Illinois Police Department and was assigned to the HSI field office in Oakbrook Terrace as a task force officer. ZAMBRANO's responsibilities as an HSI task force officer included investigating narcotics offenses and handling confidential sources.

    c. Agent A was employed by HSI as a special agent assigned to the Oakbrook Terrace field office. Agent A's responsibilities as a special agent included investigating narcotics offenses and handling confidential sources. Agent A worked with ZAMBRANO on HSI narcotics investigations.

    d. ZAMBRANO and Agent A co-handled an HSI confidential source ("Source A").

e. On or about January 9, 2017, ZAMBRANO and Agent A received $50,000 in HSI funds. ZAMBRANO withdrew the $50,000 in cash from an HSI bank account, and ZAMBRANO and Agent A signed a receipt for the $50,000 stating that they gave the $50,000 to Source A to "purchase [1] kilogram of heroin from a source of supply."

f. On or about the same day, Source A, acting at the direction of ZAMBRANO and Agent A, obtained approximately two kilograms of heroin from two male suspects during a controlled narcotics transaction. According to a law enforcement report authored by ZAMBRANO, Source A did not pay the male suspects any money for the heroin because the transaction was on "consignment," that is, the heroin was provided on credit without any pre-payment of money.

g. When HSI issued funds to purchase narcotics, the HSI personnel who took custody of the funds were required to return any unused funds to HSI and complete the appropriate documentation. As of 2018, HSI did not have any documentation evidencing the return of the $50,000 in cash that ZAMBRANO and Agent A took custody of on or about January 9, 2017.

h. In or around 2018, the Federal Bureau of Investigation ("FBI") and the Department of Homeland Security Office of Inspector General ("DHS-OIG"), each an agency within the executive branch of the Government of the United States, began an investigation of ZAMBRANO and Agent A of potential violations of federal criminal law concerning the $50,000 ZAMBRANO had withdrawn (the

"Investigation"), which funds the FBI and DHS-OIG had been unable to locate or otherwise account for.

 i. On or about January 23, 2019, ZAMBRANO and Agent A were notified that an HSI supervisor was reviewing the January 9, 2017 controlled heroin transaction involving Source A.

 j. On or about February 13, 2019, as part of the Investigation, agents from the FBI and DHS-OIG attempted to contact Source A for the purpose of interviewing Source A, and left their contact information with a relative of Source A.

 k. On or about February 13, 2019, Source A advised ZAMBRANO about the efforts of agents to contact Source A, and ZAMBRANO directed Source A to contact the FBI and find out what they wanted.

 l. On or about February 15, 2019, ZAMBRANO again directed Source A to call the FBI and ask them what they wanted.

 m. On or about February 19, 2019, agents from the FBI and DHS-OIG interviewed Source A.

 n. On or about February 21, 2019, ZAMBRANO talked to Source A about his interview with agents from the FBI and DHS-OIG, and asked Source A questions concerning the scope and nature of the Investigation.

 o. The following matters, among others, were material to the Investigation:

  i. Whether ZAMBRANO knew Source A had been interviewed by FBI and DHS-OIG agents;

ii. What ZAMBRANO had asked Source A about the interview; and

iii. Why ZAMBRANO would be interested in asking Source A about the interview.

2. On or about April 4, 2019, at Chicago, in the Northern District of Illinois, Eastern Division,

FERNANDO ZAMBRANO,

defendant herein, did knowingly and willfully make materially false, fictitious, and fraudulent statements and representations in a matter within the jurisdiction of the FBI and DHS-OIG, each an agency within the executive branch of the government of the United States, when ZAMBRANO was interviewed by an FBI agent and DHS-OIG agent and stated in substance that:

a. ZAMBRANO was not aware whether Source A had spoken to other law enforcement agents concerning the FBI's investigation;

b. ZAMBRANO "never heard anything more" after telling Source A to call the FBI and "see what they want";

c. Source A never told ZAMBRANO whether he talked or didn't talk to the FBI;

d. In reference to whether Source A talked to the FBI, Source A never told ZAMBRANO "anything about it afterwards"; and

e. In reference to whether Source A talked to the FBI, Source A "didn't talk about that, and I didn't ask him."

4

In violation of Title 18, United States Code, Section 1001(a)(2).

A TRUE BILL:

_____
FOREPERSON

_____
UNITED STATES ATTORNEY